# THE STATE v. WILL MULLINS, Appellant.

Division Two, February 18, 1922.

1. **ERRONEOUS INSTRUCTION: No Objection: All Law of Case: Duty of Court.** Under the statute (Sec. 4025, R. S. 1919) it is the duty of the court to instruct the jury on all questions of law arising in the case which are necessary for their information in giving their verdict; and where the court gave an instruction for the State which is erroneous on its face, and defendant did not object to it, nor assign it as error in his motion for a new trial, yet did assign as one of the errors committed that the court failed to instruct on all the law of the case, the point is saved by said motion, and the judgment will be reversed because of the giving of said erroneous instruction.

2. ————: **False Pretense: Mere Promise.** Where defendant was charged with obtaining money under false pretense, and the information charged five alleged false statements, one of which was that defendant had stated that his check for $590, which he had given as the purchase price for mules, would be paid by the bank upon which it was drawn when presented, an instruction for the State telling the jury that if said representations were made, and they "or any one of them was untrue" and known to the defendant to be untrue, they should return a verdict of guilty, was erroneous on its face, because the statement that the check would be paid when presented was purely promissory in character and not the statement of an existing fact, and did not come within the statute relating to false pretenses; and although defendant did not object to said instruction, or assign error as to it in his motion for a new trial, yet as he did assign as one of the errors the failure of the court to instruct on all the law of the case, and it is the duty of the court to instruct the jury on all questions of law arising in the case necessary for their information, the giving of said erroneous instruction was saved for review, and was reversible error.

3. **FALSE PRETENSE: Promise that Check will be Paid.** Where none of the evidence offered proved any of the alleged misrepresentations except the promissory statement of defendant that his check, given as the purchase price of mules, would be paid when presented to the bank on which it was drawn, and that was not a false pretense within the meaning of the statute, and there was no proof of representations by defendant that he had on deposit any money in said bank or that he was in solvent circumstances, a conviction cannot stand.

State v. Mullins.

4. ——: No Funds in Bank: Prima-Facie Evidence: Settlement. Where defendant, in payment for mules purchased by him, drew a check in favor of the seller, which was presented to the bank on which drawn, payment refused and defendant notified, that he immediately returned the mules, and two days later agreed with the seller to make him whole by paying all the expenses and ten dollars and he afterwards complied with that agreement, he in effect complied with the statute (Sec. 3554, R. S. 1919) declaring that the drawing of a check upon a bank in which the drawer has no funds shall be prima-facie evidence of intent to defraud unless within five days after notice of dishonor the drawer shall make the drawee whole, and the drawing of the check was not prima-facie evidence of intent to defraud.

Appeal from Ozark Circuit Court.—*Hon. Fred Stewart,* Judge.

REVERSED.

*G. W. Rogers* for appellant.

(1) The verdict is against the evidence and the court erred in overruling the demurrer to the evidence filed by defendant. (2) Regarding the representation that defendant had credit at the bank and the check would be paid when presented, there is no evidence that such representations were made unless there is an implied representation, as a matter of law, that the drawer of a check has the funds on deposit to pay the check when presented when he gives the check. There may be such an implied representation for the purpose of a civil suit but not for the purpose of a criminal prosecution. Maxey v. State, 85 Ark. 499, 108 S. W. 1135.

*Jesse W. Barrett,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondent.

The court did not commit error in overruling appellant's demurrer to the evidence, and in submitting the case to the jury. The record discloses that there is substantial evidence upon which to submit the case to the jury. State v. Loesch, 180 S. W. 875; State v. Foley, 247

Mo. 631; State v. Fields, 234 Mo. 627; State v. James, 216 Mo. 407; State v. Wooley, 215 Mo. 687; State v. King, 214 Mo. 390; State v. Stewart, 127 Mo. 293.

WHITE, C.—The defendant was tried before a jury in the Circuit Court of Ozark County on a charge of obtaining property under false pretenses, on November 11, 1920, was found guilty, and his punishment assessed at two years' imprisonment in the State Penitentiary. He appealed in due form from the judgment thereupon rendered. The specific charge against the defendant is that he obtained from one W. H. Blunt three mules of the value of five hundred and ninety dollars, by means of a check of that amount drawn upon a bank in which he had no funds. W. H. Blunt and his wife lived on a farm about four miles and a half west of Gainesville in Ozark County. He handled stock and had mules for sale. Some time in April, 1920, while Blunt was away from home, the defendant appeared at his place for the purpose of buying mules and made a deal with Mrs. Florence Blunt, the wife of W. H. Blunt, who had authority to sell the mules. According to the story of Mrs. Blunt the defendant said he was buying mules; that he had been down in Big Bottoms and had taken ten head of mules to sell and had just got back. After some bargaining he reached an agreement with Mrs. Blunt whereby he was to buy three mules for five hundred and ninety dollars. One Newt Wilson, who was employed by Mr. Blunt at the time, was present. When the price was agreed upon he wrote a check for five hundred and ninety dollars, dated May 6, 1920, payable to W. H. Blunt, drawn on the Farmers & Merchants Bank of Mountain Home, Arkansas. Mrs. Blunt asked him if "we could cash the check here at Gainesville" and he said, "Yes, Ma'am, my cousin is cashier of the bank there [Mountain Home] and you can cash it anywhere."

That was on Thursday, according to the story of Mrs. Blunt. The Saturday following she went to Gainesville with the check and presented it to the Bank of Gainesville. The cashier, J. C. Harlin, declined to cash it, but

said he would send it to Mountain Home. It appears that instead of doing so he took it there himself on the same day. When testifying he related how he went to the bank at Mountain Home and presented the check, and payment was refused. He was told that the defendant was in town at a certain livery stable. Harlin went to the livery stable, took the defendant aside and told him Mrs. Blunt wanted him to come down there and see if the check was good and if it wasn't he wanted to get the mules. Defendant said, "All right, the mules are here." He said the party who was expected to buy the mules wasn't there; that he had intended to sell the mules and put the money in the bank to pay the check. Harlin took the mules back, and they were turned over to Blunt Sunday morning.

Blunt testified that he met the defendant Monday morning in Gainesville; that defendant told him he had done wrong, but wanted to do what was right. He explained to Blunt that he had thought he could take the mules to Mountain Home, sell them and make a good profit on them, and have the money in the bank before the check got there. The check, however, was hurried there instead of taking the usual course. Defendant said if he had been let alone he would have sold the mules and would have had the money in the bank.

It was agreed then that the defendant would pay Blunt ten dollars and the expense he had incurred, and that would settle the matter. The defendant did not have the money with him, and asked Blunt to take a note. They agreed that defendant should give a mortgage on a pony and two cows to secure the amount agreed upon. The next day Blunt informed defendant that he had changed his mind; that he would not take a note. Afterwards, however, defendant gave him a note and subsequently paid it in full. Blunt filed his charge, and caused the defendant to be arrested on Saturday following the conversation on Monday. On this evidence the defendant was found guilty as stated above.

I. The precise false statements alleged to have been made by the defendant in the information are as follows:

(1) That the defendant, Will Mullins, was then in good and solvent circumstances;

(2) That the said Will Mullins was then a dealer in mules and made it a business to buy mules in the State of Missouri and sell same in the State of Arkansas;

(3) That he, the said Will Mullins, then had on deposit and had a credit in said bank (meaning the Farmers & Merchants Bank of Mountain Home) the sum of five hundred and ninety dollars;

(4) That said check and order for said sum of five hundred and ninety dollars would be paid by said bank when said check and order was presented;

(5) That a cousin of said Will Mullins was then a cashier of said bank.

The information alleges that those statements and representations were untrue and were believed by said Florence Blunt, and that she was thereby induced to deliver the mules in question in consideration of the delivery of said check. The information then sufficiently alleges the falsity of the said statements.

*Erroneous Instruction: Duty of Court.*

The court instructed the jury that if the said several false representations were made and that the said representations, or *any one of them was untrue,* and was known to the defendant to be untrue, then they might find the defendant guilty. The appellant did not object to this instruction, although its impropriety appears so plainly on its face. On that instruction the jury were authorized to find the defendant guilty if they should find that he said the check would be paid when presented, although they may not have found any other statement to be untrue. That statement was purely promissory in character and not the statement of a fact. While the defendant's counsel in its motion for new trial did not assign error to that instruction, he did assign as one of the errors that the court erred in failing to instruct on all the law of the case.

Section 4025, Revised Statutes 1919, requires that the court in the trial of a felony, "must instruct the jury in writing on all questions of law arising in the case which are necessary for their information in giving their verdict."

Here was a charge that the defendant had told Mrs. Blunt that the check which he gave her would be paid. It is apparent upon the face of the record and the evidence presented that this was the very statement upon which she relied in parting with the mules. The law is well settled upon that subject—that a promissory statement does not come within the statute relating to false pretenses. The false pretense must be a misrepresentation of some fact. [State v. Petty, 119 Mo. 425; State v. Young, 266 Mo. 723, l. c. 734; State v. Krouse, 171 Mo. App. 424.]

The court should have instructed the jury that they could not find the defendant guilty on a representation of that kind; they must find him guilty, if at all, upon misrepresentation of some existing fact. That was a question of law arising in the case upon which it was necessary to instruct, and the court committed reversible error in failing to instruct the jury in that regard. The point was saved in the motion for new trial.

II. The only evidence that the defendant stated he was a mule dealer and in the business of buying mules was the testimony of Mrs. Blunt. She said the defendant told her that he was buying mules; that he had been down on the back bottoms and had taken ten head of mules down there to sell and had just got back. That, apparently, is all he said. There was no evidence whatever to show that that statement was untrue. The attorney for the State desired Mrs. Blunt to be more specific, and asked her what Mullins said to induce her to part with the mules. She repeated the statement just mentioned; that he was buying mules, and that he had been down in the back bottoms with ten head. Then she added: "I supposed he had the money to buy mules with

as he had sold ten head of mules.'' The attorney then pressed her to say whether or not he was a mule dealer, and she answered: ''That is what he said,'' referring, of course, to his statement about the ten mules. She then added: ''That made me think he was a mule buyer.'' There is nothing in the evidence to show that he made any other statement to the effect that he was engaged in the business of buying mules.

Mrs. Blunt then was asked if there was anything else that induced her to sell the mules; if he had said anything about having money on deposit in the bank. Her answer was this:

''No sir, when I asked the question, 'Can we cash this check at the Gainesville Bank?' and he said his cousin was cashier of the bank at Mountain Home.

''Q. Did that induce you to sell? A. Yes, that made me feel safe.''

In corroboration of her statement, Newt Wilson, the hired man, was brought in. He testified that when Mullins gave Mrs. Blunt the check on the Mountain Home Bank he said he had been doing business with that bank, that the cashier was a cousin of his, and that he had just been down with ten head of mules and sold them. He said he had a contract for four more of them, and had them bought down the creek.

There was no representation whatever by the defendant that he had on deposit any money in the Mountain Home Bank, or that he was in solvent circumstances.

One or two witnesses who knew the defendant were introduced by the State, and said they didn't know of his buying, or being in the business of buying, and selling mules; one of them said he was ''trading and trafficking.''

The defendant himself swore that he had a contract for four mules, mentioned by some of the State's witnesses; that the owner of the mules suddenly went to Oklahoma, and the trade fell through. He was corroborated in this by the man with whom he began the negotiation. The defendant swore that he had rented

out his farm, and that he was in fact buying and selling mules. Other evidence tends to corroborate that.

Mr. Harlin, cashier of the Gainesville Bank, was asked if he was acquainted with the cashier of the Farmers & Merchants Bank. He said he was. He was asked if that cashier was a cousin of Mr. Mullins, and answered that if he was he didn't know it. The cashier of the bank of Mountain Home was not sworn. There was no evidence that he was not a cousin of the defendant.

So the only evidence offered which proved any of the alleged misrepresentations was the promissory statement of the defendant that his check would be paid. As seen above, that is not a false pretense within the meaning of the statute.

III. It may be urged that presentation of a check drawn on the bank was prima-facie a representation that the defendant had funds there. The Legislature of 1917 (Laws 1917, p. 244) passed an act incorporated in Revised Statutes 1919 as Sections 3553 and 3554. Section 3553 relates to the offense of drawing a bogus check or checks upon a bank with insufficient funds to meet it. It will be noted that the defendant was not prosecuted under that section, but under Section 3343, a general statute relating to the obtaining of money by false pretenses. Section 3554 is as follows:

"Sec. 3554. As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima-facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon (together with the drawee thereof the amount due thereon), together with all costs and protest fees, within five days after receiving notice that such draft, check or order has not been paid by the drawee."

Under that section the drawing of a check upon a bank in which the drawer has no funds would be prima-facie evidence of intent to defraud unless within five days after notice of dishonor the drawer should make the drawee whole.

For the purpose of this case we will assume, without deciding, that this section is applicable to the present transaction. Here the check was presented to the Bank of Gainesville on Saturday, taken to Mountain Home the same day, and presented to the bank on which it had been drawn, payment refused and the defendant on the same day notified. He immediately returned the mules and two days later, on Monday, agreed with Blunt to make him whole. That is, they reached an agreement by which the defendant was to pay all the costs and expenses and ten dollars. The defendant afterwards carried out that agreement by paying the amount agreed upon. In effect, he complied with the statute, so that the drawing of the check upon the bank in which he had no funds was not under the statute, prima-facie evidence of intent to defraud.

There was no evidence whatever of an intent to defraud. On the contrary, all the facts indicate that the defendant had no intention of defrauding Blunt. He didn't attempt to escape with the mules; he took them where he said he was going to take them, he did not attempt to conceal them. He remained at the very place where his check would be sent for payment. Everything indicates that his intention was exactly what he said it was, that he expected to sell the mules and have the money in the bank by the time the check got there in the usual course. It was merely a foolish venture of his in which nobody was hurt and in which nobody was likely to be hurt except himself. No doubt the jury found him guilty because they were under the impression that his promise that the check would be paid was a false representation.

The judgment is reversed and the defendant discharged. *Railey* and *Reeves, CC.,* concur.

PER CURIAM.—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.