MORTENSEN *v.* STATE.

4538                                          217 S. W. 2d 325

Opinion delivered January 31, 1949.

Rehearing denied February 28, 1949

*Hebert & Dobbs,* for appellant.

*Guy E. Williams, Attorney General* and *Jeff Duty,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was tried on an information filed by the prosecuting attorney charging him with the crime of obtaining $3,000 from the Arkansas Trust Company through false pretenses. He was convicted, given a sentence of five years in the penitentiary, and has appealed.

The information was defective in that it did not recite the false pretenses employed in obtaining the money, and prior to Initiated Act No. 3, would have been demurrable on that account.

Appellant filed a demurrer to the information, which was overruled, after which he filed a motion to require the filing of a bill of particulars, giving the names of the witnesses which the state would produce to testify against him, and "to specifically state what way and by what means the alleged crime was committed; if the alleged crime was committed in person by the defendant, if any other person was connected with said alleged crime, and if so state the name or names and how they were connected with said crime." In response to this motion, a bill of particulars was filed which recited:

"That the crime alleged in the indictment was committed by C. Mortensen acting through an agent, Anna Hale, who, according to his instructions secured by fraudulent means as alleged in the indictment from Floyd Housley and the Arkansas Trust Company; that said monies were transmitted by said agent of C. Mortensen and delivered in Garland County to another agent of C. Mortensen, who transmitted them to a bank account of C. Mortensen in Peoria, Illinois.

"That two persons were connected with said crime as agents of C. Mortensen, one of them the Western Union Telegraph Company, the other, Anna Hale, Anna Hale having acted as agent of C. Mortensen in securing funds from the Arkansas Trust Company and turning them over to the Western Union Telegraph Company, the other agent of C. Mortensen."

The response was not as definite and full as appellant had the right to require it to be, but there was no request that it should be made more particular and certain. Section 4, Act 160 of the Acts of 1937, appearing as § 3796, Pope's Digest, provides that "A supplemental bill of particulars may be required upon order of the trial court, if the bill of particulars filed by the prosecuting attorney is not sufficiently definite to ap-

prise the defendant of the specific crime with which he is charged.''

Without requiring a supplementary bill of particulars, which appellant had the right to ask, he filed a demurrer to the information which alleged that the information and bill of particulars did not state an offense or crime under the statutes of Arkansas, and that the court did not have jurisdiction of the appellant, or of the subject matter of the alleged offense.

The demurrer was properly overruled as the information complies with the form of indictment set out in § 23 of Initiated Act No. 3, amending § 3029 C. and M. Digest, prescribing the form of an indictment in which a violation of the law is charged.

It had been uniformly and frequently held prior to the enactment of Initiated Act No. 3, that in prosecution for grand larceny an allegation of sufficient value to constitute that crime was essential to constitute a valid indictment for that offense. But in the case of *Underwood v. State,* 205 Ark. 864, 171 S. W. 2d 304, Justice Knox said: ''In view of the provisions of § 22 of Act No. 3 (Acts 1937, p. 1384), it is doubtful whether it is now necessary in an indictment or information which specifically defines the crime charged as being grand larceny to allege the value of the property stolen.'' In construing the purpose and effect of Act 3 it was there held (to quote a headnote in that case), ''Initiated Act No. 3 of 1936 was adopted by the people for the purpose of simplifying procedure in criminal cases and eliminating some of the technical defenses by means of which criminals had often escaped punishment.'' Here the information specifically charged the offense of obtaining money through false pretenses, and if it was thought that the first response to the motion for a bill of particulars did not sufficiently apprize appellant of the crime he was charged with having committed, and the manner of its commission, his remedy was to ask a supplemental bill of particulars. But instead of so doing he demurred to the information and now insists:

"(1) That said informations and the bill of particulars in support thereto shows on the face thereof that the defendant was not in the jurisdiction of the State of Arkansas when the crime was committed; that said crime was not committed by the defendant.

"(2) That said informations and the bill of particulars in support thereof do not state an offense, or crime, under the Statutes of Arkansas, as to this defendant.

"(3) That this Court does not have jurisdiction of the defendant or of the subject."

As we have just said the information did charge the commission of an offense against the laws of this State. The other objections are considered herein.

Appellant's brief discusses these objections under the heads: First, that appellant was not in the state when the money was obtained; Second, that no false representations were made to the Trust Company when the check was cashed; and Third, that one Anna Hale who cashed the check was not acting for or under appellant's orders.

The relevancy of these points will appear from the following summary of the testimony. Appellant was engaged in the publishing business, but his principal business was that of manufacturing and selling cosmetics. He carried his principal bank account with the South Side Trust & Savings Bank of Peoria, Illinois, but he had an account with another bank in the State of Iowa, which he had closed out. In the promotion of his business appellant traveled over several states, but much of his business originated in the Hot Springs, Arkansas, area. He employed one Anna Hale, who operated a beauty parlor in Hot Springs, and clothed her with very wide authority. She was authorized to make collections and deposits with the Trust Company in appellant's name, and an account was opened and a signature card was executed which authorized her, as well as appellant, to draw checks against this account.

The account continued for several months and became quite active. Three similar transactions occurred, one on March 25, 1946, and the other two on March 26, 1946. The one on which the information was based occurred March 26, 1946, in the following manner: Anna Hale drew a check on the South Side Trust & Savings Bank of Peoria, Illinois, for the sum of $3,000, payable to her order, to which she signed appellant's name. She endorsed the check and obtained $3,000 in cash from the Trust Company in Hot Springs, and on the same day remitted that sum by telegram to the account of appellant with the South Side Trust & Savings Bank of Peoria, Illinois. The only explanation of the unusual transaction of drawing the check on the Peoria bank against appellant's account with that bank, and immediately remitting by wire the proceeds thereof to appellant's account at the same bank, was Mrs. Hale's testimony that this was done at appellant's direction in a telephone conversation.

However unusual the transaction appears to be, the undisputed testimony shows that it occurred as Mrs. Hale testified, and the only dispute about this question of fact is whether appellant authorized what she did. She testified that he did, and he denied authorizing and directing Mrs. Hale to give these checks.

A similar transaction occurred on March 26, 1946, when Mrs. Hale cashed a $1,600 check on the Peoria bank, and on March 25th, the preceding day, cashed a check on the Peoria bank for $5,000. Mrs. Hale testified that none of these transactions were for her benefit, and that she derived no profit from any one of them, and that all were had and done under appellant's specific direction. While appellant denied giving these directions, the fact is undisputed that Mrs. Hale remitted through the Western Union Telegraph Company these three separate amounts to appellant's credit with the Peoria bank. No one of the three checks was paid by the Peoria bank when presented for payment in the usual course of banking business, and the Trust Company at Hot Springs has sustained the total loss of the amount of the three checks,

except that a partial collection was made on the $1,600 check.

Appellant admitted when told the checks had been dishonored that he said to an officer of the Trust Company that he would make them good or try to make them good, but he testified that his reason for saying he would make them good or pay them was that he felt morally responsible as the checks were drawn against his account by someone in his organization.

One of the errors assigned for the reversal of the judgment is the admission in evidence of the $5,000 check and the $1,600 check, but this testimony was competent as corroborating Mrs. Hale's testimony as to this obscure and unusual transaction and as showing the scheme or plan which appellant employed in obtaining the money from the Trust Company.

Now while it is understood that the proceeds of all three checks were remitted to appellant's account with the Peoria Bank, it is also undisputed that appellant was not in this state when the checks or any one of them was cashed, and he therefore insists that the Garland Circuit Court, where the information was filed, was without jurisdiction in the offense. But the case of *Cousins* v. *State,* 202 Ark. 500, 151 S. W. 2d 658, is to the contrary. There the defendant had been convicted of a violation of the over-draft statute, appearing as § 785a, *et seq.,* Pope's Digest. Two checks constituting the over-draft were drawn in Missouri, on banks in that state and mailed to the payees in this state. We reversed the conviction in that case not because of the want of jurisdiction, but for the reason that the over-draft act applied only to checks or drafts drawn upon some bank in this state. By Act 232 of the Acts of 1943 the law was amended to cover checks or drafts drawn upon banks or other institutions outside of this state, which act was passed subsequent to the opinion in the Cousins case, *supra.*

It was said in the Cousins case, "Now, it is to be remembered that appellant was not prosecuted for and has not been convicted of obtaining money or other

thing of value by false pretense." Here appellant was prosecuted for and has been convicted of obtaining money by false pretenses. It was in this state that the checks were drawn and cashed, and the money thereon obtained.

It is true appellant himself did not cash the checks in this state, but according to the state's testimony he procured Mrs. Hale to do so, and he was therefore an accessory. But § 25 of Act 3, *supra,* has abolished the distinction between accessories and principals.

On the question of venue, we quoted with approval in the case of *Cousins* v. *State, supra,* from § 134 of the chapter on Criminal Law, 22 C. J. S., p. 219, as follows: "If a crime covers only the conscious act of the wrong-doer, regardless of its consequences, the crime takes place and is punishable only where he acts; but, if a crime is defined so as to include some of the consequences of an act, as well as the act itself, the crime is generally regarded as having been committed where the consequences occur, regardless of where the act took place, and under a statute so providing a person who commits an act outside the state which affects persons or property within the state, and which, if committed within the state, would be a crime, is punishable as if the act were committed within the state."

Here appellant accomplished the unlawful act of obtaining money from the Trust Company by inducing Mrs. Hale to cash a worthless check in this state, and we think the Garland Circuit Court had jurisdiction.

The question of venue in cases of this kind is the subject of the annotation to the case of *State* v. *Devot,* 66 Utah 319, 242 Pac. 295, 43 A. L. R. 532, which sustains the view that the Garland Circuit Court did in fact have jurisdiction. See, also, § 87 of the Chapter on False Pretenses, Am. Jur., Vol. 22, p. 22, p. 491, and cases there cited.

It is undisputed that appellant did not personally cash the check, but his agent did, and according to her testimony, at his direction and under his orders. *Fisher* v. *State,* 161 Ark. 586, 256 S. W. 858, a false pretense

case, involved the question of liability of one who acts through an agent, and it was there said: "In such cases it is sufficient if the defendant either obtained the possession or control of the goods, or that such goods were delivered to another at his request or in accordance with his wishes."

It is insisted however that inasmuch as Mrs. Hale made no representation as to the validity of the check when she cashed it, no violation of the law was committed, and the case of *Maxey* v. *State,* 85 Ark. 499, 108 S. W. 1135, 14 Ann. Cas. 509, is cited to support that contention. This opinion is somewhat ambiguous and appears to support this contention, but it was there said: "Now, upon an indictment for obtaining money 'by color of any false token or writing,' the proof might be deemed sufficient to warrant conviction where it tended to show that the defendant presented and received money on a check which he knew to be worthless and would not be paid, even though there was no affirmative representation as to its validity or worth. Under that charge, guilty knowledge of the worthlessness of the check would be of itself, obtaining money by color of the false token or writing, without a positive affirmation on his part that the amount called for in the writing would be paid. *Reg.* v. *Hazelton, supra* (3 Cox C. C. 1); *People* v. *Donaldson,* 70 Cal. 116."

This case is cited in a number of the annotated cases, and the annotators are not in accord as to its holding. For instance in the note to the case of *People* v. *Mutchler,* 35 A. L. R. 348, it is said: "The different jurisdictions appear to be divided upon the question of necessity of the making of a false representation, extrinsic to the paper itself, that the check or draft is good, or will be paid, in order to render criminal the obtaining of property by means of such check or draft. Thus, the making of such a representation has been held unnecessary in the following jurisdictions:" and the Maxey case is cited as among that number.

At § 35 of the Chapter on False Pretenses, 11 R. C. L., p. 852, it is said: "As to whether the mere drawing

and the delivery of a check is equivalent to a representation that the drawer has funds or credit in the bank there is diversity of opinion. One view is that it is not such a representation as will sustain a charge of swindling; but the decided weight of authority is to the contrary."

The annotated case of *People* v. *Mutchler, supra,* and of *Berry* v. *State,* 153 Ga. 169, 111 S. E. 669, 35 A. L. R. 370, and the construction of these annotations in the case of *Whatley* v. *Alabama,* 174 A. L. R. 169, cites many cases and texts on this subject which we do not review as it would be an interminable task to do so, but a summary of the cases sustains what is said in R. C. L., *supra,* to be the ruling according to a great weight of authority. The general effect of what we think to be the great weight of authority is that the offense here charged is one in which the intent to defraud is an essential element and is not committed, even though a check is drawn upon an account by one who knows that he has no funds to his credit with which to pay it, provided he has the honest and reasonable expectation that the check or draft will be paid upon presentation; nor is that crime committed by one who, unaware of his balance, draws a check in excess thereof. Section 785a and amendatory acts apply in that case. Here appellant makes no contention and did not offer the defense that he thought the check would be paid upon presentation. On the contrary he denied authorizing Mrs. Hale to draw the check.

In the absence of any explanation as to the validity of a check when it is presented to be cashed, a representation that it was a valid instrument is implied and if it is presented by one who knows that the check is invalid, and will not be paid when presented for payment, the law against obtaining money or property through false pretense is violated and we think that the fact that appellant caused his agent, within two days, to cash checks, one for $5,000, another for $1,600 and a third for $3,000 sustains the finding that appellant knew he was drawing or was having drawn checks against an account to the credit of which there were no funds to cash them, as all of the checks were returned unpaid.

with the notation that they were not paid because of insufficient funds to pay them. The question whether Mrs. Hale was acting for appellant and under his orders was a disputed question of fact and was submitted to the jury and is concluded by the verdict of the jury. To the extent, if at all, the holding in the Maxey case is in conflict with the views here expressed that opinion is modified.

We think the testimony abundantly supports the verdict and that no substantial or prejudicial error was committed. The judgment must therefore be affirmed, and it is so ordered.

ED. F. McFADDIN, Justice (dissenting). Mortenson was charged with violating the False Pretense Statute (§ 3073-4, Pope's Digest). The check on which this prosecution was based was drawn on a bank in which the depositor had an account, but in which account the funds were insufficient to cover the check when presented.

I most respectfully dissent from that portion of the majority opinion which holds that the cashing of such a check constituted obtaining money under false pretenses; because the record here affirmatively shows that there was *no representation* made at or before the time of cashing the check at the bank in Hot Springs. In other words, when the money was received on the check, there was no representation that funds were then in the bank on which the check was drawn, sufficient to pay the amount of the check.

If it be said that there was an implied representation that the check would be paid when presented, then even that representation does not constitute a false pretense under our statute. Our cases hold that it is not a false pretense if the representation relates to something to occur in the future. See *Conner* v. *State,* 137 Ark. 123, 206 S. W. 747. A check drawn on an existing bank account is a representation as to a *future matter—i. e.,* that the check *will be* paid when presented. This is clearly shown by § 10219, Pope's Digest (a part of the Uniform Negotiable Instruments Law) which reads: "The drawer by drawing the instrument admits the

existence of the payee and his then capacity to indorse; and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it."

So, cashing—without any representations—a check on an account that had insufficient funds to cover the check when presented, does not constitute a false *pretense,* but a false *promise.* Such is the situation in the case at bar.

Now, let us consider the case of *Maxey* v. *State,* 85 Ark. 499, 108 S. W. 1135, 14 Ann. Cas. 509, decided by this court in 1908, and which the majority discusses at some length. It has always been generally understood that the opinion holds as stated in the first syllabus: "An indictment for obtaining *money* under false pretenses is not sustained by proof that defendant drew his personal check in favor of a bank on another bank when he had no money therein, and that the amount of the check was placed to his credit on account in the former bank, and that his account in such bank was from time to time drawn upon in favor of other parties."

The Legislature evidently understood that cashing a check on an account that had insufficient funds to pay the check when presented was not a violation of the False Pretense Statute, because by Act 258 of 1913, the Legislature made the giving of a "bad check" an offense. If Maxey v. State means *now* that cashing such a check is obtaining money under false pretenses, then the case meant the same thing in 1913; and if that were true, then there was no necessity for the 1913 Legislature to pass its said Act 258, expressly designed to make the giving of a "bad check" an offense. Furthermore, we held that the giving of a post-dated check was not a violation of said Act 258 (*Smith* v. *State,* 147 Ark. 49, 226 S. W. 531); and then the Legislature by Act 304 of 1929 amended said Act 258 to read as now found in §§ 3088-9, Pope's Digest,—*i. e.,* to make the giving of a post-dated check come within the purview of the "bad

check'' statute. See *Patterson* v. *State*, 194 Ark. 488, 107 S. W. 545. Later, by Act 232 of 1943, the Legislature extended the purview of the law to cover checks drawn on banks outside of this State. It is most unfortunate that the Legislature should have been obliged to enact all of these laws since 1908—as heretofore mentioned—if Maxey v. State all the time meant what the court now holds it to mean.

The majority opinion in the case at bar concludes its discussion of the Maxey case with this language: ''To the extent, if at all, that the holding in the Maxey case is in conflict with the views here expressed, that opinion is modified.''

Thus, as I see it, the majority is holding that Mortensen has violated the False Pretense Statute, in spite of the holding in the Maxey case and the legislative .enactments since that case.

To sum up this dissent: Mortensen should be tried for violating the ''bad check'' statute; but under the facts in this case, he is not guilty of violating the False Pretense statute, because there was no representation made at or before the time of cashing the check at the bank in Hot Springs.

I am authorized to state that Mr. Justice Robins joins me in this dissent.