STATE of Missouri,
Plaintiff-Respondent,

v.

Walter WARREN, Defendant-Appellant.

No. 12174.

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 2, 1982.

Donald E. Lamb, Centerville, for defendant-appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Walter Warren guilty of the offense of passing a bad check as defined and denounced by §§ 570.120.1 and 570.120.6(2), RSMo 1978, and has assessed his punishment at imprisonment for a term of two years. Defendant appeals.

In October 1980, Thomas Archer owned a used car lot near Ironton. One of the vehicles offered for sale was a 1973 pickup truck. When Walter drove by the Archer lot on October 4, he saw the pickup, decided "it looked like ... a pretty good ... vehicle" and inquired what Archer's "bottom dollar" was. Archer agreed to sell the pickup for $1,600. Walter was interested but advised Archer that he "had to go get a co-signer" before he could finance the purchase.

On October 10, Walter again appeared at the used car lot with a blank counter check to the First National Bank of Annapolis. Telling Archer that "his banker had okayed the loan, that he could write the check," Walter asked Archer to "fill in" the check for the purchase price of the pickup. Archer did so, and Walter signed the check. Archer deposited the check with the Iron County Security Bank.

About 10 days later the depositary bank called Archer and "told [him] that there wasn't any money in there for [Walter's check] and it wasn't any good and ... to come down and pick it up." Archer went to the depositary bank "and wrote them a check and got [Walter's check] back." By resorting to legal process, Archer was able to "repossess" the truck.

It stands admitted that Walter had no account of any kind at the First National Bank of Annapolis when he uttered the check. Walter admitted that he signed the check in the amount of $1,600 payable to Archer's business; he had no account at the First National Bank of Annapolis, but he did not inform Mr. Archer of that fact because he "figured [his] loan was going through and ... the money would be there" when the check was presented. As a further matter of excuse, Walter made an offer of proof that he had negotiated a sale of the truck on Archer's account when the vehicle was recovered. The trial court refused the offer. On this appeal, Walter complains that: 1) he was prevented from showing that he had a reasonable expectation the check would be paid upon presentation in the ordinary course of business, and 2) the trial court excluded competent and relevant evidence which would have proved he had no intent to defraud Mr. Archer.

In connection with the first point, our attention is drawn to the fact that § 570.120.1 proscribes issuing or passing a check *knowing* it will not be paid, and counsel emphasizes that § 570.120.1 requires an intent to defraud. Defendant's argument, as briefed, is that he could have no intent to defraud if he genuinely believed he would have the money in the bank when the check was presented; he tendered evidence which would have established such a reasonable expectation, and the trial court erroneously refused his tender.

■ The point is ill taken. In the first place, it is a distortion of the record to say the trial court excluded all evidence of the defendant's efforts to make the check good. Rather, the trial followed a pattern: time and again, counsel made extravagant offers of proof. For the most part, the tenders either: a) included irrelevant matters, or b) were made without any statement of the

purpose of the offer. It is elementary that an offer of proof must be reasonably specific and should show its materiality unless the purpose of the offer is patent. *Compton v. Williams Bros. Pipeline Company*, 499 S.W.2d 795, 797[2][3] (Mo.1973); C. McCormick, Evidence § 51, p. 111 (2d ed. 1972). And, if a tender consists of evidence which is admissible in part and inadmissible in part, the trial court is justified in rejecting the entire offer. *Lott v. Kjar*, 378 S.W.2d 480, 484 (Mo.1964); *Fincher v. England*, 463 S.W.2d 82, 86[7] (Mo.App.1971). Put differently, it is for the proponent to sever the good and the bad parts of the offer. 1 H. Wigmore, Evidence § 17, p. 321 (3d ed. 1940). In this case, counsel's broadside "offers of proof" were properly refused.

■ Nevertheless, after refusing counsel's very general and conclusional offers, the trial court permitted specific interrogation upon the same subject of inquiry, to the extent the examination was material and relevant. Thus, for example, defendant was permitted to testify that before he purchased the vehicle, he inquired about a loan at the Charter Finance Company and "figured [he] had [the loan] if he got a co-signer." Further, the defendant was permitted to testify to several unsuccessful attempts to obtain a loan in the amount of the check *after* he had issued it. The point might fairly be disposed of by reiterating the rule that if, in a specific instance, the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses, given before or after the objection was sustained. *Boring v. Kansas City Life Insurance Company*, 274 S.W.2d 233, 239[7] (Mo.1955). Even so, we prefer to discuss the claim of error on its merits.

■ Given the wide variety of "bad" or "worthless" or "bogus" check statutes which have been enacted, the courts have held with remarkable unanimity that if an intent to defraud is an element of the offense charged, a reasonable expectation that the check will be paid upon presenta-

tion in the ordinary course of business negates the intent to defraud even though the defendant had no funds or credit with the drawee bank at the time the check was issued. *Williams v. United States*, 278 F.2d 535, 537[1, 2] (9th Cir. 1960); *Mortensen v. State*, 214 Ark. 528, 217 S.W.2d 325, 329–330[6] (1949); *People v. Becker*, 137 Cal. App. 349, 30 P.2d 562, 564[5, 6] (1934); *People v. Dennis*, 43 Ill.App.3d 518, 2 Ill.Dec. 396, 357 N.E.2d 563, 565[2] (1976); *People v. Coats*, 16 Mich.App. 652, 168 N.W.2d 463 (1969); Annot., 9 A.L.R.3d 719, 721–725 (1966). What counsel has overlooked here is that in this jurisdiction, defendant's intent in a "no funds" or "no account" check case is determined as of the time the check is issued, not as of the time the check was presented for payment. *State v. DeClue*, 400 S.W.2d 50, 54[5, 6] (Mo.1966); *State v. McWilliams*, 331 S.W.2d 610, 612–613[4] (Mo.1960). Further, unlike the Illinois statute discussed in *Dennis, supra*, § 570.120.2 provides that the non-existence of an account with the drawee bank is prima facie evidence of defendant's purpose to defraud.[1] It follows ineluctably that defendant's reasonable expectation of payment must have existed at the time he issued the check. His subsequent efforts to cover the check before it was presented were wholly irrelevant and had no probative bearing whatever on his intent to defraud Mr. Archer. Moreover, the "reasonable expectation of payment" which constitutes a defense must be more than a mere hope that funds will be available. *Williams v. United States, supra*, 278 F.2d at 537–538; *United States v. Broxmeyer*, 192 F.2d 230, 232[2, 3] (2d Cir. 1951). In this case, the defendant was not employed when he wrote the check. Further, he had been convicted of arson and was on probation. He had no bank account anywhere. His status at the First National Bank of Annapolis was that of a debtor in default; that bank had made a loan to the defendant in 1968, and the loan remained unpaid. The defendant did say he had spoken to "some guy" at the Charter Finance

---

1. For a detailed explanation of the nature and constitutional basis of this presumption, see *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217, 1221–1224 (1973).

Corporation about a loan before he issued the check, and "figured" he could obtain a loan "if [he] got a co-signer," but the evidence further showed that his co-signer was not only unacceptable to the Charter Finance Company, but to several other lending institutions as well. Defendant's prospect of obtaining a loan, either before or after the check was issued, was such a remote contingency that it could in no sense be called a reasonable expectation. None of the evidence excluded by the trial court would have established such a reasonable expectation and the defendant was not prejudiced by its exclusion. *United States v. Broxmeyer, supra*, 192 F.2d at 232[2, 3].

Defendant's additional claim of error is that the trial court erroneously refused to permit him to testify that he had arranged to sell the pickup before Archer repossessed it, because such evidence would have shown he intended to make restitution and therefore had no intent to defraud. Further, the defendant argues he should have been allowed to show that Archer recovered the pickup and sold it; such evidence, defendant asserts, would have negated an intent to defraud because it would have shown Archer incurred no loss whatever. Defendant cites *State v. Mullins*, 292 Mo. 44, 237 S.W. 502 (1922), among other precedents in support of this assignment.

This contention is much like the other. On cross-examination, Archer testified that after he obtained "a court order" and went with the sheriff to repossess the pickup, Walter "said that he was going to sell the truck and then give me my money." Archer replied that defendant had had "plenty of time—he should have brought the truck back." Archer refused to settle his grievances for less than $1,800. Archer also testified that he later sold the truck to his brother. So, as with the first assignment of error, this contention might be dismissed on the authority of *Boring v. Kansas City Life Insurance Company, supra*, 274 S.W.2d at 239[7], and counsel forthrightly concedes as much. Even so, we will consider the assignment briefly on its merits.

It might be pointed out that § 570.120.1 is a new statute which specifically prohibits

issuing or passing a bad check; it does not in terms require, as did former § 561.450, that the defendant obtain "money, property or [other] valuable thing." It may, therefore, have been the intent of the General Assembly to eliminate such a requirement; § 224.5 of the Model Penal Code and the statutes of several states have eliminated that requirement in the belief that a bad check is likely to be negotiated for cash, credit (as was the case here) or property and thus have an adverse impact on ordinary commerce. See 2 Model Penal Code and Commentaries, Part II, p. 316 and n. 5. It is not necessary at this point, however, to construe § 570.120.1, and we decline to do so. For the purposes of this opinion, we shall regard the cases construing former § 561.450 as persuasive, if not controlling.

Presumably, counsel has cited *Mullins* primarily as authority for the proposition that an agreement to pay for the article obtained by false pretenses may be shown to negative an intent to defraud. Perhaps such an agreement constitutes a partial defense, *State v. Harden*, 613 S.W.2d 700, 703[2] (Mo.App.1981), but this case is not factually analogous to *Mullins* or to *Harden*. In both those cases, the victim agreed to accept payment after dishonor. Here, Archer did not agree, nor did the defendant offer to return the truck. To the contrary, Archer was obliged to resort to legal process to recover the truck from the defendant.

Be that as it may, this case is not in any event legally analogous to *Mullins* or to *Harden*. In *State v. Griggs*, 361 Mo. 758, 763–764, 236 S.W.2d 588, 590[2] (1951), the various false pretenses and "bad check" statutes were discussed and distinguished. The court noted that former § 561.450 was amended in 1913 to provide that obtaining money or property by the mere means of a check given with intent to cheat or defraud, the drawer knowing that he had no funds in the bank, was in itself a criminal fraud even though no express representation was made that the check would be paid on presentation. The court also noted a difference between "insufficient funds" checks and "no funds" or "no account" checks, stating that former § 561.460 was enacted

specifically to deal with insufficient funds checks. Later cases made it clear that the offense charged here was complete when the check was issued and the victim parted with his property. *State v. Hartman*, 364 Mo. 1109, 1120, 273 S.W.2d 198, 206[17] (banc 1954).

In this case, the check was drawn on a bank with which the defendant had no account of any kind. Defendant admitted he knew he had no account with the drawee bank. Unlike *Mullins* and *Harden*, the commission of the crime was complete when Walter issued the check and obtained the assignment and application for a title, and it was no defense that Archer later recovered the vehicle and sold it, nor was the offer of restitution any defense. *State v. McWilliams, supra*, 331 S.W.2d at 612–613[4]; *State v. Zingher*, 302 Mo. 650, 657, 259 S.W. 451, 453 (1924); 35 C.J.S. False Pretenses § 37, pp. 862–863 (1960). The trial court did not err in excluding evidence of an offer of restitution or evidence of a subsequent sale of the vehicle.

We find no error; the judgment is affirmed.

BILLINGS, P. J., and TITUS and PREWITT, JJ., concur.