**STATE of Missouri, Respondent,**

v.

**Joane M. HARRIS, Appellant.**

**No. 67075.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 17, 1996.

George W. Gilmore, Jr., Sikeston, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

RHODES RUSSELL, Judge.

Joane M. Harris ("Defendant") appeals the judgment following her conviction by the court of eight counts of passing bad checks in violation of § 570.120 RSMo Cum.Supp.1991.[1] Defendant was sentenced to two years on each count, with the first four counts to be served concurrently and the remaining four counts to run consecutively. Execution of the sentence was suspended, and Defendant was placed on probation and ordered to make restitution in the amount of $72,643.51. We affirm.

The standard of review for a court-tried criminal case is the same as for a jury-tried criminal case. *State v. Kreyling*, 890 S.W.2d 414, 416 (Mo.App.1995). We review the record to see whether sufficient evidence exists from which the trial court could have returned a guilty verdict. *Id.* In so doing, we accept all evidence and inferences favorable to the guilty verdict and ignore all contrary evidence and inferences. *Id.*

Viewing the evidence in the proper light, the evidence establishes the following. Defendant, through her corporation J.M. Harris, Inc., owned and operated a truck stop and three service stations in different cities. She regularly did business with United Oil Company, a wholesale petroleum and automotive business. Their business relationship started on August 21, 1991. Beginning in the summer of 1992, Defendant's payments to United Oil were untimely or failed to arrive at all. Defendant blamed the delay on the postal system. United Oil and Defendant then made an agreement wherein Defendant would hand-deliver all payments. Defendant would make out individual checks to cover each invoice, some of which were postdated. The number of checks varied each delivery from five to twelve checks.

On June 9, 1992, Defendant opened an account for J.M. Harris, Inc. with First Security State Bank. Joane M. Harris was the only person's name on the signature card. Defendant and the bank would customarily communicate with each other about the suffi-

ciency of the account's balance to adequately cover the daily supply of checks delivered for payment. These conversations ceased in August 1992. At that point, the cashier at the bank received no calls from Defendant and was unable to contact Defendant through normal channels.

During the month of August 1992 Defendant wrote many checks to United Oil, only eight of which were the basis of her conviction. Five of those checks were dated August 20, 1992 and were made out for amounts of $7,415.51, $3,718.52, $3,758.82, $6,897.14 and $3,543.65, respectively, for a total of $25,333.64. These checks were deposited, according to bank records, that same day. These five checks were presented to First Security State Bank for payment on two occasions and were dishonored for insufficient funds. At the start of the business day on August 20, 1992, Defendant's account had a balance of $1,885.88, and closed with an ending balance of $1,098.34.

The other three checks were dated August 27, 1992 and were made out to United Oil for $7,006.07, $6,983.89 and $7,670.63, respectively, for a total of $21,660.59. These checks were deposited that same day and, likewise, were dishonored by the bank after two attempts for insufficient funds. On August 27, 1992, Defendant's account had a beginning balance of $-25.34 and an ending balance of $2,309.84.

The state also submitted evidence of at least six other checks issued by Defendant and dishonored by the bank after two tries for insufficient funds. Defendant was not charged with passing these bad checks and does not challenge the admissibility of the checks on appeal.

The matter was then turned over to the Cape Girardeau County Prosecutor, who sent a notice to Defendant notifying her of the bad checks and informing her that if she did not make restitution she would be prosecuted and that nonpayment within ten days of receipt of notice would serve as evidence of Defendant's intent to defraud. No restitu-

1. The checks at issue were passed August 20th and 27th of 1992. Section 570.120 was amended in 1992, which became effective on August 28, 1992. All statutory references are therefore cited to RSMo Cum.Supp.1991, the version in effect at the time the checks were passed.

tion was made and Defendant was prosecuted in an eight count indictment. From her conviction by the court Defendant appeals.

In her first point, Defendant claims there was insufficient evidence to support her conviction of passing bad checks. Defendant argues there was no evidence that she had the purpose or intent to defraud at the time she delivered the checks to United Oil. The necessary intent to defraud was lacking, asserts Defendant, because the checks delivered to United Oil were postdated and, though admitting she did not have sufficient funds to cover the amount of the checks at the time delivered, she did intend to have the appropriate funds at the time the checks were offered to First Security State Bank.

■ To secure a conviction under § 570.120, the state must establish that the defendant passed a bad check with intent to defraud. § 570.120.1. Intent to defraud is determined as of the time the check is issued. *State v. Warren*, 628 S.W.2d 410, 412 (Mo. App.1982). This subjective intent is generally proven by circumstantial evidence. *State v. Kalagian*, 833 S.W.2d 431, 434 (Mo.App. 1992).

■ Looking at the record, we find sufficient evidence of Defendant's intent. The checks contain Defendant's handwriting and signature. Five of the checks contained the date August 20, 1992 and were deposited by United Oil on that same date, and three more checks were dated August 27, 1992 and deposited on that date. Defendant contends all eight checks were postdated and that she therefore did not have the requisite intent to defraud since United Oil had notice that there were insufficient funds at the time of issue. The record, however, does not support Defendant's contention. In support Defendant points to her and her daughter's testimony that the checks were postdated. However, this court must consider all reasonable inferences favorable to the verdict and disregard any evidence or inferences to the contrary. Five of the checks contained the August 20th date and the other three had the August 27th date. The checks themselves contained no notations of being postdated, nor did Defendant's checkbook register specify they were postdated. The manager of United Oil, Fred Wilferth, testified Defendant never requested he hold onto a check or indicated to him there would be insufficient money to cover the checks in question. There was nothing in United Oil's records representing the checks were postdated when received. The only evidence presented suggesting the checks in question were postdated came from the testimony of defendant and her daughter, who sometimes delivered the checks to United Oil. Yet, the credibility of witnesses and the weight to be given the evidence are for the trial court to determine, and this court is to defer to the trial judge's superior position from which to determine credibility. *State v. Blankenship*, 830 S.W.2d 1, 16 (Mo.1992). We are not to determine witness credibility nor weigh the evidence on appeal. *State v. Harper*, 884 S.W.2d 362, 364 (Mo.App.1994). Rather, we are to determine only whether there is sufficient proof from which the trial court could reasonably have found defendant guilty. *State v. Hood*, 680 S.W.2d 420, 423 (Mo.App. 1984). Based on our review, we find the proof in this case is adequate.

Further support of a finding of intent to defraud lies in the bank records. The record reveals that when Defendant passed the checks on August 20th and 27th, there were insufficient funds in the account to pay the checks. The beginning and ending balances for those dates were low, and at one point in the negative digits. Defendant herself admitted to not having sufficient funds to cover the checks at the time she wrote them. Also, during the period these subject checks were written, Defendant's daily communications with the bank had subsided. The cashier at First Security State Bank testified she used to have daily conversations with Defendant concerning the status of the account. Either the cashier would contact Defendant to let her know what funds were needed or Defendant would contact the cashier to find out how much was needed in the account. At times Defendant would, according to the cashier, request the bank to hold a check so she could bring in the funds to cover the check. These conversations ended sometime during the time the subject checks were issued. Events occurring both before and af-

ter the charged incidents are relevant to show the necessary intent. *State v. Kalagian,* 833 S.W.2d 431, 434 (Mo.App.1992). Here, Defendant had knowledge of or the means to know of the funds available and knew or had reason to know the checks would be dishonored.

■ In addition, there was evidence of other checks returned because of insufficient funds from the same account. Such evidence, though not related to the specific charges of this case, have a bearing on Defendant's intent and knowledge of whether the checks would be paid. *See State v. Smiles,* 723 S.W.2d 65, 67 (Mo.App.1986). We can infer from this evidence that she had the requisite intent to defraud.

Finally, we note the intent to defraud is further supported by the statutory presumption that if the checks are not paid within ten days of receiving notice that they have been dishonored, a presumption arises of fraudulent intent. § 570.120.3. Defendant here received notice that there were insufficient funds to cover the amounts of the checks but no repayment was made. Point one is denied.

■ In her second point, Defendant challenges her sentence on constitutional grounds. Defendant argues her sentence for two years on each count violates Article I, § 11 of the Missouri Constitution. Article I, § 11 states: "That no person shall be imprisoned for debt, except for nonpayment of fines and penalties imposed by law." We find that that provision does not proscribe the punishment imposed upon Defendant here.

First, we note that although Defendant was sentenced to jail, that sentence was ordered suspended. Second, we find that the sentence herein imposed does not fall within the proscriptions of Article I, § 11. The Missouri Supreme Court has before confronted this issue and held in the case *State v. Taylor,* 335 Mo. 460, 73 S.W.2d 378, 379–81 (banc 1934), that a statute criminalizing the making, drawing or delivery of a check when the maker has insufficient funds in the bank did not violate the constitutional provision against imprisonment for debt. The court in that case reasoned that the imprisonment fell within the provision's exceptions. *Id.* 73 S.W.2d at 380. The debt due, according to the court, was something wholly separate from the criminal charge giving rise to the imprisonment. *Id.*

We see no reason not to follow the holding of *State v. Taylor.* Though the language of the statute and the constitutional provision have been reworded slightly, their substances and meanings have remained unchanged. We hold the penalties imposed for violating § 570.120 do not fall within the constitutional prohibition against imprisonment for debt but constitute a penalty imposed by law, punishable through incarceration, which arise out of conduct separate and distinct from the existence of the debt. Point denied.

Accordingly, the judgment is affirmed.

CRANE, C.J., and SMITH, J., concur.