(No. 35990. )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ESAU MARTIN, Plaintiff in Error.

*Opinion filed February 1, 1963.*

ROGER K. JOHNSON, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Following a bench trial in the criminal court of Cook County the defendant, Esau Martin, was found guilty of murdering his sister-in-law, Eula Lloyd, and was sentenced to the penitentiary for a term of 99 years. He prosecutes this writ of error for review.

In the record presented to us there is proof which establishes with certainty, that, on the day in question, the deceased and the accused engaged in one or more normal acts of sexual intercourse, and other proof that defendant had

unnatural intercourse with decedent *per os*. The scene of these activities was in the deceased's apartment and, if defendant's unrebutted testimony is to be believed, were the culmination of a two-day period of drinking and sexual intercourse which had started while decedent was spending a weekend visiting her sister, defendant's wife, at the residence of the latter. The two were discovered in the apartment by a maternal aunt of the deceased, who also resided there, and at the time, so far as the record shows, the decedent lodged no complaints against defendant. According to the aunt, she found the decedent lying in a bed, clothed only in a half-slip and bleeding heavily from the vagina, while defendant, fully dressed except for his shirt, was "passed out" on the bedroom floor. When defendant aroused he refused to discuss what had occurred, other than to warn the aunt not to tell his wife, and left the premises. Thereafter, the aunt summoned a police ambulance to take the decedent to a hospital. Her death occurred the following day and, according to the testimony of a pathologist who performed an autopsy, was caused by Boeck's sarcoidosis of the lungs, liver and spleen, (a disease comparable in some respects to tuberculosis,) "contributed to and aggravated by lacerations of the anus and rectum, with infection." He was not able to state the cause of the lacerations but did eliminate the possibility that they have been caused by surgical procedures performed upon the decedent prior to her death.

Also in evidence is a statement of defendant, given at the time of his arrest, to the effect that they had engaged in a "savage," "wild" and "wicked" affair and that he had "just got evil" while drinking and engaging in sex play with the decedent and had put his hand into her vagina.

Although the indictment returned against defendant charged only that the wilful thrusting of the hand into the vagina was the criminal agency causing death, to sustain the conviction of murder it is now alternatively con-

tended by the People that the acts of sexual intercourse, natural and unnatural, were accomplished by force and were the criminal agency or agencies which caused death. For the defendant, who insists that all the acts of sexual intercourse were voluntary, it is contended that the malice essential to the crime of murder was not established, and that it was not proved beyond a reasonable doubt that any act for which he was responsible caused or contributed to the death.

Laying aside considerations of a possible variance between the proof and the allegations of the indictment, any issue of whether the acts of sexual intercourse were the criminal agency causing death may at once be eliminated from the scope of this review, even if we assume that they were unlawful acts. There is a total lack of proof that either kind of intercourse, natural or unnatural, caused or contributed to the death, either singly or in combination or in conjunction with any other bodily condition found. Furthermore, without stating the distasteful details, there is in our opinion a reasonable doubt as to whether the act or acts of natural intercourse, a lawful act if consented to, were in fact accomplished by force. This leaves for our consideration only the issue relating to the charge and proof that defendant thrust his hand and arm into the vagina, and that such conduct produced the lacerations and infection in the anus and rectum which contributed to the death.

The sole witness to testify to the decedent's physical condition and the cause of her death was Dr. Joseph E. Campbell, a pathologist in the employ of the coroner, who performed an autopsy on her body on August 19. Describing his external findings, the doctor related that there were eleven tears of the anus, extending into the rectum, and small abrasions and bruises around the lips of the vagina and the clitoris. In addition, he found minute scratches and abrasions on the neck, back and breasts, a half-inch superficial laceration on the outer part of the left eyebrow, and

two surgical incisions in the abdomen which resulted from operations performed shortly before decedent's death. Concerning the bruises and small cut on the body, we digress to say defendant testified that he and the deceased had bathed together following their sexual activities, and that the latter had fallen in the tub. Describing his internal findings, Dr. Campbell testified there were bruises and abrasions in the lining of the anus and rectum, hemorrhage in the tissue of the rectum, and infection in the lining of the anus and the lacerations thereto. Further, as before noted, he found that the deceased was suffering from Boeck's sarcoidosis of the lungs, liver and spleen and was of the opinion that death had been caused by such disease, contributed to and aggravated by the lacerations and infection found in the anus and rectum. Upon cross-examination, however, the witness manifested some doubt, stating on one occasion: "Usually in these conditions I consider the underlying conditions as primary, with the subsequent condition as contributing to and aggravating the pre-existing conditions. So that I feel that in this particular case the primary cause of death *is probably* the pre-existing inflammation which unquestionably is aggravated and contributed to by the injuries sustained." (Emphasis supplied.) No explanation was made as to how the lacerations and infection would contribute to or aggravate sarcoidosis to a point of death, the doctor specifically avoiding the issue when asked by stating that he meant the lacerations and infection were contributing and aggravating causes of death, rather than to the Boeck's sarcoidosis. In addition, the witness stated "there is certainly a possibility that death was entirely due to the injury," but, here again, there was neither satisfactory nor logical explanation how such comparatively minor injuries to non-vital organs such as the anus and rectum could have had a terminal result. The doctor also testified he was unable to state what had caused the lacerations in the anus and rectum and, in such regard, the only

other pertinent proof in the record was defendant's testimony that he had not inserted his penis or any other object into the decedent's rectum.

We are troubled here, first, by the vague and sketchy medical testimony as to the cause of death and, second, by the lack of proof which satisfactorily connects the lacerations in the anus to criminal conduct on the part of defendant, or which permits an inference free from reasonable doubt that such was the case. Indeed, there is reason to believe that the absence of proof connecting the injuries to the anus to the thrusting of the defendant's hand and arm into the vagina is what has prompted a contention in this court that the acts of sexual intercourse were the criminal agency causing death. In their brief the People seek to remedy the deficiency in the proof by saying: "The severe injuries to the anus of the victim were *apparently* caused by Martin while his hand and arm were inside the woman." (Emphasis supplied.) However, even if we assume defendant did in fact thrust his arm into the vagina, and that his act was such as would permit the malice necessary to the crime of murder to be implied, we cannot say that the proof connecting his conduct with the injuries to the anus may rest upon inference, speculation or conjecture. We would also add, in view of the extremely minor damage to the vagina and the lack of damage to the womb, ovaries and other organs beyond the lips of the vagina, reasonable doubt arises as to whether defendant did in fact thrust his arm into the vagina to the extent charged.

Added to the foregoing shortcoming is the unsatisfactory medical proof, already detailed, as to the cause of death. As was true in *People* v. *Benson*, 19 Ill.2d 50, the relationship between a criminal agency and the cause of death is left largely to inference and speculation. Indeed, our firm reaction in this case after several readings of the medical testimony is that the precise cause of death was not known or determined.

Upon a consideration of the entire record we conclude that grave and substantial doubt exists both as to the criminal agency and the cause of the death. Under the circumstances it becomes our duty to reverse the judgment of conviction entered by the criminal court of Cook County.

*Judgment reversed.*