THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OLIVIA DENNIS, Defendant-Appellant.

First District (4th Division)   No. 62901

Opinion filed October 20, 1976.

James J. Doherty, Public Defender, of Chicago (Owen Greenberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Olivia Dennis, was charged with the crime of deceptive practices. After a bench trial she was convicted and sentenced to a term of probation of one year. From this conviction defendant appeals.

The issue presented for review is whether the State proved the defendant guilty beyond a reasonable doubt.

The defendant was arrested on May 16, 1974, and charged with deceptive practices in violation of section 17—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 17—1(d)).

Carol J. Bowler, security director at Bonwit Teller of Chicago, testified she was in the shoe department of Bonwit Teller and observed the defendant purchase a pair of shoes from a salesgirl. Ms. Bowler testified in payment for the shoes, the defendant wrote a check payable to Bonwit Teller. Defendant handed the salesgirl two pieces of paper for proper identification, the information from which was then transferred by the salesgirl to the back of the check.

Ms. Bowler testified she then observed the defendant buy a watch and give the salesgirl a check, upon which identification information was recorded. At this time the defendant was detained and charged. Neither of the checks was ever presented to the First National Bank of Chicago for payment, nor did Mrs. Dennis leave the store in possession of either the watch or the shoes.

Joseph Malecki, an employee of the record management department at the First National Bank of Chicago, testified Mrs. Dennis' checking account had been closed by the bank on May 14, 1974, just two days prior to her arrest. He testified that April 17, 1974, was the last day the account

had a positive balance. Mr. Malecki further testified he believed various overdraft notices were sent to Mrs. Dennis between April 8, 1974, and May 9, 1974. Mr. Malecki stated there had been 22 checks written and returned from April 19, 1974, until the closing of the account. Malecki also stated the records showed $1,195 had been deposited to the account on March 21, 1974, and $440 had been deposited to the account on March 25, 1974.

Albert Treger, an employee of the bank's personal checking department, testified, according to his notes, a warning letter was sent to Mrs. Dennis by the bank on April 11, 1974. Treger stated his notes indicated he had a telephone conversation with a person who identified herself as Mrs. Dennis on April 30, 1974, in which he informed her of her account being overdrawn. She responded that a deposit would be made on May 1, 1974.

Mrs. Dennis testified she was being supported by her husband, Norris Dennis, and he either gave her cash or deposited money in her checking account. She had not received notice that the bank had, on May 14, 1974, closed her checking account until after her release from jail on the night of May 16, 1974, when she found the notice in her mailbox. At the time she wrote the checks she believed the checks were good and she expected them to be honored by the bank. Her husband, Norris Dennis, testified he had made deposits to Mrs. Dennis' checking account at the Bank of Austin and he had told her he would make a deposit for her in May of 1974, however, he was unable to make the deposit and was unable to contact Mrs. Dennis to let her know he had not made the deposit.

After hearing all of the evidence and closing argument, the court returned a finding of guilty and sentenced the defendant to one year probation.

The deceptive practices section of the Illinois Criminal Code provides, in pertinent part:

"A person commits a deceptive practice when, with intent to defraud: * * * [w]ith intent * * * to pay for property * * * he issues * * * a check * * * knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check * * * is issued * * * is prima facia evidence that the offender knows that it will not be paid by the depository." Ill. Rev. Stat. 1973, ch. 38, par. 17—1(d).

■■■ This section places a burden on the State to prove the element of "intent to defraud" beyond a reasonable doubt. This section also requires the State to prove the check was drawn while the drawer knew it would not be paid by the depository. Failure to have sufficient funds in the depository when the check is issued is prima facia evidence the

offender knows it will not be paid, but is not prima facie evidence of intent to defraud.

When purchasing the items in question the defendant, along with issuing checks in payment, produced a valid driver's license and a proper firearm owner's identification card. This establishes the defendant freely informed Bonwit Teller of a place of residence where she could be reached; presumably for the purpose of collection in the event the check would be dishonored upon presentment to the depository. The facts show the defendant was never given an opportunity to honor the checks. We find it plausible defendant expected her husband would make a deposit in her checking account and she alternatively expected to personally honor the checks after receiving notice from the bank. Furthermore, Bonwit Teller never presented the checks to the bank for payment.

■■ It is well settled, where the proof is entirely circumstantial, if there is any reasonable hypothesis arising from the evidence consistent with the innocence of the defendant it must be accepted. *People v. Calhoun* (1972), 4 Ill. App. 3d 683, 281 N.E.2d 363.

After examination of the complete record we find the State failed to prove beyond a reasonable doubt the defendant intended to defraud Bonwit Teller.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby reversed.

Reversed.

JOHNSON, P. J., and ADESKO, J., concur.