THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CAROLYN SUTTON, Defendant-Appellant.

First District (5th Division)   No. 63066

Opinion filed November 12, 1976.

James J. Doherty, Public Defender, of Chicago (Ronald Kales and John M. Kalnins, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was charged with the offenses of aggravated assault and unlawful use of weapons. Following a bench trial, she was found guilty of both charges and sentenced to 60 days in the House of Corrections. On appeal, she asserts that the trial court erred in permitting testimony relating to other crimes and that the evidence raised a reasonable doubt as to her sanity.

Dr. Earl Caldwell, the complainant, testified defendant had been his patient for two to three years when, on June 7, 1975, she appeared in his office without an appointment and asked to speak with him. They went into a consultation room, where she told him that she was unable to pay her rent because she had been out of work and would be evicted if he did not loan her $1,000. He stated, over objection, that when he refused to give her the money she began waving a plastic bag containing a gun, and he then gave her $500. After she left, he called the police, who advised him to file a complaint, which he had not yet done when, on the next day, June 8, while visiting a patient on a house call he was confronted by defendant, who told him that the $500 he had given her the day before was counterfeit. He stated that she then pulled out a gun, which had been hidden under her jacket, and pointed it at him. He grabbed the gun and, while they were scuffling for it, the police arrived.

The witness also testified that defendant had previously been treated for alcoholism and, at the June 8 confrontation, he observed that she seemed nervous and upset, that her eyes were dilated, and that she "didn't

even know what she was doing." Objections by defendant to that testimony were sustained, and it was stricken. The witness, however, did testify without objection that "she walked alright." On cross-examination, Dr. Caldwell testified that he never saw defendant socially and that his relationship with her never extended beyond that of doctor and patient. It was stipulated by the parties that a gun, bullets and holster which were received in evidence were those on the person of defendant at the time and place of the June 8 confrontation.

Defendant testified in her own behalf that she was an employee of the Cook County Department of Corrections and that Dr. Caldwell had been her gynecologist since 1973 and, on one occasion, had treated her for a broken arm. She had been "out" with the doctor socially many times, and on June 7, 1975, he came to her apartment where they were "playing records and dancing." The next day, she saw him as she was leaving the laundry room of her apartment building, and she asked to speak with him. She stated that the doctor approached and knocked her to the ground, where they struggled, during which time he pulled her gun from her bag. The gun was on the ground when the police arrived. She denied threatening or pointing the gun at him or that she received $500 from him. She stated that the doctor had rented the apartment in her name, and she admitted asking him for the rent. She also admitted she had gone to his office on June 7 and had asked for some money, but she denied either receiving any money or having a gun with her at that time.

OPINION

■■ Defendant was charged with and found guilty of offenses arising from her conduct on June 8, and she contends the court erred in allowing the testimony of Dr. Caldwell concerning their meeting on June 7. She argues that his testimony that she began waving a plastic bag containing a gun was the improper admission of evidence of another crime.

It is the general rule that evidence of other crimes is inadmissible when independent of or disconnected from the crime with which the defendant is charged. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805; *People v. Whitley* (1974), 18 Ill. App. 3d 995, 311 N.E.2d 282.) Nonetheless, evidence of other crimes is admissible when it serves to place defendant in proximity to the time and place of the offense charged or aids to establish identity or tends to prove design, motive or knowledge. (*People v. Botulinski* (1945), 392 Ill. 212, 64 N.E.2d 486; *Whitley*.) Whether the general rule of *Cage* or its corollary in *Botulinski* should apply depends on whether the evidence of other crimes is so closely connected with the offense for which the accused is being tried, that it tends to prove guilt of that charge. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347,

*cert. denied,* 364 U.S. 923, 368 U.S. 978; *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) Thus, evidence of other criminal acts involving or explaining circumstances of the crime charged is admissible. (*United States v. Rivera* (7th Cir. 1971), 437 F.2d 879, *cert. denied,* 402 U.S. 947; *United States v. Spatuzza* (7th Cir. 1964), 331 F.2d 214, *cert. denied,* 379 U.S. 829.) It is only where the commission of another offense has no connection with or relation to the prosecution of the crime charged and, as a result, would prejudice a defendant, that evidence concerning it renders the trial unfair. *People v. Wilbert* (1973), 15 Ill. App. 3d 974, 305 N.E.2d 173; *People v. Robinson* (1968), 98 Ill. App. 2d 285, 240 N.E.2d 397.

■■ In the instant case, we believe the circumstances of the June 7 confrontation were so closely connected to the June 8 meeting as to justify their admission. The testimony concerning the first of those meetings established the reason for the second. In fact, the two meetings were seemingly intended by defendant to accomplish the same purpose—to "borrow" money from Dr. Caldwell. The statement attributed to defendant—that the $500 given on June 7 was counterfeit—could easily be considered as an attempt to induce a further payment of money. Thus, it appears to us that the court properly allowed Dr. Caldwell's testimony concerning the confrontation on June 7 to explain and put their meeting on the next day in proper context. See, *e.g., Wilbert.*

Defendant also argues here that certain testimony of Dr. Caldwell was sufficient as to raise a reasonable doubt as to her sanity at the time of the offense and that the State thereby had the burden to establish her sanity, which it failed to do. The testimony allegedly giving rise to the issue consists in his statement that she told him the $500 he had given her was counterfeit, and from his answers to certain questions concerning the June 8 meeting, as follows:

"Q. Doctor, how would you describe her demeanor or mannerisms at the time she pulled the gun out on you?

A. I thought she might have had a complete mental breakdown. She had been treated before for alcoholism—

[Defense Attorney]: I'm going to object to that.

The Court: Objection sustained.

⁂

Q. Would you explain her physical condition as it appeared to you when you saw her pull the gun out on you on the day in question?

A. She looked real nervous and upset. Her eyes were dilated, and she was out of it. She didn't even know what she was doing.

[Defense Attorney]: Objection to the last part.

The Court: The last answer may be stricken.

[Assistant State's Attorney]: How was she walking?

A. She walked all right."

■■ It is the rule in this State that a person is not criminally responsible if, as a result of a mental disease or defect at the time of the conduct charged, that person lacks substantial capacity either to appreciate the criminality of the conduct or to conform it to the requirements of law. (Ill. Rev. Stat. 1975, ch. 38, par. 6—2.) However, in a criminal proceeding, the accused is presumed to have been sane at the time of the commission of the alleged offense (*People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321), and it is only when evidence is introduced sufficient to raise a reasonable doubt of sanity that it becomes incumbent on the State to establish that the accused had sufficient capacity at the time of the crime for its commission (*People v. Gold* (1968), 38 Ill. 2d 510, 232 N.E.2d 702, *cert. denied*, 392 U.S. 940; *People v. Robinson* (1961), 22 Ill. 2d 162, 174 N.E.2d 820, *cert. denied*, 368 U.S. 857). It has also been stated that the purpose of the presumption of sanity is to require the production of evidence sufficient to bring the accused's sanity into issue (*People v. Lechner* (1976), 35 Ill. App. 3d 1033, 342 N.E.2d 820), in which event the presumption vanishes and the burden shifts to the prosecution to establish that defendant was legally sane at the time of the occurrence (*Lechner; People v. Lassiter* (1971), 133 Ill. App. 2d 353, 273 N.E.2d 166). In Illinois, a defendant's initial burden to introduce evidence to rebut a presumption of sanity has been held to be sufficient where it was shown that there exists a prior adjudication of insanity, if it is shown that such insanity continues (*People v. DePompeis* (1951), 410 Ill. 587, 102 N.E.2d 813, *cert. denied*, 346 U.S. 904); a medical opinion of an attending doctor that defendant is insane (*People v. Matter* (1939), 371 Ill. 333, 20 N.E.2d 600); an opinion of a psychiatrist to the same effect (*People v. Skeoch* (1951), 408 Ill. 276, 96 N.E.2d 473); or the opinion of a lay person based upon facts obtained from observation of the accused (*People v. Patlak* (1936), 363 Ill. 40, 1 N.E.2d 228; see also *People v. Bedford* (1964), 31 Ill. 2d 227, 201 N.E.2d 420). However, it was stated in *People v. Smothers* (1971), 2 Ill. App. 3d 513, 519, 276 N.E.2d 427, 431-32, *aff'd*, 55 Ill. 2d 172, 302 N.E.2d 324, that:

"Examination of many cases in our courts has failed to disclose any authority which suggests that the issue of 'sanity' is properly raised before the jury solely from testimony of witnesses describing the appearance, conduct or words of the accused."

In *Smothers*, a hospital patient killed a visitor in the hospital lounge and then set fire to the area. It was held that the issue of sanity was not properly raised solely from the testimony of witnesses describing the appearance, conduct and words of the accused. Our supreme court said,

at page 174, that although expert testimony was not required to raise the issue of sanity, "the evidence presented must raise a reasonable doubt of sanity at the time of the commission of the offense." The reasonable doubt quantum of proof was later upheld in *Redmond*, where the court rejected a contention that only "some evidence" was sufficient to raise the issue of sanity. In that case, which involved charges of battery, armed robbery, deviate sexual assault, and indecent liberties with a child, the court held the evidence was insufficient where (1) an arresting officer stated that defendant didn't act "quite normal" and used erratic speech patterns; (2) another officer stated that defendant told him he "lost his mind" at the time of the incident; and (3) defendant testified that before the commission of the offense he heard voices and spirits telling him to play with little boys.

■■ Here, defendant refers to certain testimony of Dr. Caldwell in support of her contention on the issue of sanity. We note, however, that much of this testimony was stricken on her own motion. Absent the consideration of this stricken testimony, there appears no question that reasonable doubt of sanity was not established. Even were it considered, we see it only as a conclusion by Dr. Caldwell that defendant did not know what she was doing at the time of the offense, a conclusion that the record discloses was based on his observation of her appearance and conduct. Furthermore, although there was testimony by Dr. Caldwell that defendant had been treated for alcoholism, there was no indication in the record of any prior history of mental disease or defect or that defendant otherwise lacked the capacity to appreciate the criminality of her conduct or to conform it to the law.

Thus, applying the standards of *Smothers* and *Redmond*, we are of the opinion that the evidence fails to raise a reasonable doubt of her sanity.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.