THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBIN L. SCHWARTZ, Defendant-Appellant.

First District (3rd Division)   No. 76-1050

Opinion filed September 20, 1978.

DiNatale & Montemurro, of Chicago (Anthony M. Montemurro, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Robin L. Schwartz, was charged with the involuntary manslaughter of Anthony Kallas. After a trial without a jury, he was found guilty of that crime and was sentenced to one to 10 years. On appeal defendant contends that the trial court committed reversible error in admitting into evidence testimony regarding other crimes committed by defendant; that the trial court erred in admitting the gun into evidence; that the court · erred in failing to strike testimony about the pellet recovered from the decedent's body; and that he was not proved guilty beyond a reasonable doubt. The pertinent evidence is as follows.

Stephan Jacobs and defendant lived together in a four-bedroom apartment in the city of Chicago. Jacobs testified that at approximately 10 p.m. on April 19, 1974, he was in the apartment preparing food. A young lady named Taylor Scobie, defendant, and decedent all entered the apartment and went to the dining room. Defendant stood nearby while the others, including the witness, sat at the dining room table.

According to Jacobs, decedent took out a plastic bag containing cocaine. Defendant took a piece, stating: "This is what I am keeping and it is part of what I am going to buy." The decedent replied: "You know last time you took all the rock and left the powder." The decedent proceeded to weigh some powder on a scale. Defendant left the room and returned about 30 seconds later. Jacobs was watching decedent weigh the powder while defendant stood between them. Jacobs testified: "I heard a click, I looked up. Tony looked up, and bam, the gun went off."

Jacobs saw blood coming from the decedent's eye. Defendant dropped the gun, stepped back and said, "Oh, my God." Jacobs flushed the cocaine down the toilet, ran down the stairs and threw the scale away. When he returned to the apartment, the police were talking to defendant.

Jacobs testified that he heard no argument before the shooting, and that the conversation was friendly. The gun belonged to Jacobs. Some two weeks before the present incident he showed the gun to defendant. When asked if he had any conversation with defendant, Jacobs testified:

> "I mentioned to Robin that I wanted him aware that I had owned a gun; that it was legally registered, and that I brought it into the apartment, and that I showed it to Robin. When I showed it to Robin it was unloaded, and that it would remain in my part of the apartment."

When Jacobs heard the click at the time of the occurrence, he started to tell defendant the gun was loaded.

Dr. Pascual Culala of the Cook County coroner's office performed an autopsy on the decedent. He testified that the cause of death was a bullet wound to the head causing laceration of the brain.

Officer Benedict Pfaller of the Chicago Police Department testified that when he arrived at the scene the decedent was slouched over a chair. A pistol with powder marks and one spent cartridge was on the table. No fingerprint tests were run on the gun or cartridge.

Officer Burt Nielsen of the ballistics division testified as to a trigger pull examination. He believed the gun could not be fired without the trigger being pulled, although the force required was a little less than normal. No comparison tests were conducted because the pellet recovered from the decedent's body was mutilated. The pellet had the same general class characteristics as a bullet fired from the recovered weapon.

Taylor Scobie testified that she was seated at the table with the three men who were talking, laughing and joking. As she read a newspaper, decedent weighed cocaine. Defendant and decedent had a conversation about cocaine. She next noticed defendant standing five to eight feet in front of decedent. Defendant was pointing a gun at decedent and the latter was looking up at defendant. After the shot was fired, defendant

said, "Oh my God, I shot Tony." Defendant then told the witness to leave the apartment.

Defendant did not testify.

Defendant initially contends that it was reversible error for the State to introduce evidence of other crimes allegedly committed by him when said crimes had not been charged or proved and the evidence was solely for the purpose of prejudicing the court against defendant. The other crimes referred to were possession and use of cocaine.

■■ Defendant's contention has no merit. Testimony concerning references to dealings with cocaine was relevant to the issues involved and the offenses charged, tended to prove motive, and was necessary to fully explain the circumstances surrounding the offense charged. Hence such testimony was admissible despite the fact that it may have disclosed the commission of other crimes. See *People v. Sutton* (1976), 43 Ill. App. 3d 1008, 357 N.E.2d 1209.

Defendant next contends that the trial court erred in admitting the gun into evidence because the State failed to prove that it was the same weapon used in the commission of the crime and because the State failed to establish a true chain of evidence with regard to said exhibit.

■■ In view of the defense of accidental shooting offered in the trial without a jury, we cannot see how the admission of a gun into evidence could be reversible error. In any event, there is no error in the admission of physical evidence, such as a weapon, as long as the weapon is sufficiently connected with the defendant and the crime to make it relevant as evidence. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112; *People v. Curtis* (1977), 48 Ill. App. 3d 375, 362 N.E.2d 1319.) The evidence showed that after the shooting defendant dropped Jacobs' gun in the dining room. The police recovered the gun on the dining room table. There is no indication that any other gun was involved. The recovered gun had powder marks and one spent cartridge. The gun was sufficiently connected with defendant and with the crime to make it relevant.

■■ The State adequately established a true chain of evidence with respect to the gun. In the absence of any indication of substitution, alteration, or other form of tampering, reasonable protective techniques are sufficient. (*People v. Soto* (1975), 35 Ill. App. 3d 166, 341 N.E.2d 107.) The police officer identified the weapon as the one he recovered from the apartment. He took the weapon from the scene, unloaded it, and inventoried it. This procedure adequately insured that it was the gun found at the scene. See *People v. Sansone* (1976), 42 Ill. App. 3d 512, 356 N.E.2d 101.

■■■ Defendant also argues that the trial court erred in refusing to strike the testimony of the doctor and of the ballistics expert about a bullet

recovered from the body of the decedent. He bases this contention on the fact that the State failed to produce the pellet or to offer it in evidence. We agree with the State that there is no requirement that a pellet be admitted into evidence before a witness may testify about it. There was sufficient connection between the pellet and the weapon to allow testimony about the pellet to be admitted into evidence. The testimony about the pellet was material to the issues and relevant to show that defendant fired the fatal shot. In any event, defendant could not have been prejudiced by the testimony.

Defendant finally contends that he was not proved guilty beyond a reasonable doubt. He argues that his conduct was not reckless, maintaining that he did not know the gun was loaded and that he did not point the gun at the decedent.

Section 9—3(a) of the Criminal Code provides:

"A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 9—3(a).)

Section 4—6 of the Code defines recklessness:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation * * *." Ill. Rev. Stat. 1973, ch. 38, par. 4—6.

■■ Where an accused has fired a fatal shot while aiming at or in the direction of the decedent, it is the province of the trier of fact to determine whether the killing was by misadventure or by reckless conduct. (*People v. Kelly* (1975), 24 Ill. App. 3d 1018, 322 N.E.2d 527.) In regard to whether a defendant is proved guilty beyond a reasonable doubt of involuntary manslaughter, it is a question of fact for the trier of fact to decide whether defendant recklessly performed the acts which caused death within the meaning of the Criminal Code. (See *People v. Rodgers* (1971), 2 Ill. App. 3d 507, 276 N.E.2d 504; *People v. Helms* (1971), 133 Ill. App. 2d 727, 272 N.E.2d 228.) Its determination on this issue should not be disturbed unless the trier of fact was unjustified in arriving at its finding of recklessness. *People v. York* (1978), 57 Ill. App. 3d 243, 373 N.E.2d 90; *People v. Griffith* (1978), 56 Ill. App. 3d 747, 372 N.E.2d 404.

In *People v. Slaughter* (1963), 29 Ill. 2d 384, 194 N.E.2d 193, *rev'd on other grounds* (1968), 39 Ill. 2d 278, 235 N.E.2d 566, defendant thought he heard a prowler at the door and obtained his shotgun. As his wife asked

him to put it away, the gun went off and killed her. The court held that while defendant maintained the shooting was accidental, the evidence was sufficient to rule out the defense that the shooting was the result of an accident or misadventure. The court stated at page 391:

> "Unless sufficiently manifest from the proof of the People, the burden of proving circumstances justifying, mitigating or excusing a homicide devolves upon the accused in cases such as this where he admits firing the fatal shot, (*People v. Sally*, 17 Ill. 2d 578; *People v. Franklin*, 309 Ill. 108; Ill. Rev. Stat. 1959, chap. 38, par. 373,) and it is the province of the trier of fact, whether it be court or jury, to determine whether such justification or excuse in fact existed."

In *People v. Chew* (1977), 45 Ill. App. 3d 1024, 360 N.E.2d 417, defendant shot and killed his uncle. He testified that he did not know whether the gun was loaded. He also testified that he and his uncle were not arguing and always were on good terms. Witnesses testified that the two men were friendly. In affirming the conviction for involuntary manslaughter, this court stated at page 1028:

> "* * * the jury could have inferred that defendant's careless disregard for his uncle's safety while handling the gun and while possibly under the influence of alcohol was so reckless as to constitute a deviation from the standard of care which a reasonable person would exercise in a like situation. (*People v. Carlton* (1975), 26 Ill. App. 3d 995, 326 N.E.2d 100.) We do not believe that the jury abandoned the domain of allowable inferences or entered into the area of speculation in determining that defendant's conduct in shooting his uncle was reckless and constituted involuntary manslaughter."

■ Pointing a loaded pistol at another constitutes recklessness since it is such a gross deviation from the standard of care which a reasonable person would exercise. (*People v. Hines* (1975), 31 Ill. App. 3d 295, 334 N.E.2d 233; *People v. Rodgers* (1971), 2 Ill. App. 3d 507, 276 N.E.2d 504.) Defendant in the present case attempts to avoid the consequences of the foregoing principle by maintaining he was unaware the gun was loaded. He bases that claim, however, on the equivocal testimony of Jacobs. As indicated by Jacobs' response set forth earlier in this opinion, it is not clear from his testimony whether he informed defendant the gun was unloaded. The trier of fact could have concluded that defendant had not been told the gun was unloaded. In any event, we believe the trier of fact could have properly determined that defendant acted recklessly in not checking the condition of the gun prior to the incident since the conversation in question had taken place two weeks earlier. The court therefore could have concluded that under the circumstances defendant's conduct was reckless even if he believed the gun was unloaded.

Defendant pointed the gun at the decedent; he cocked the gun and pulled the trigger. Despite the testimony that no previous argument had taken place, the shooting occurred after a conversation about a potential disagreement over the sale of drugs. Considering all the direct and circumstantial evidence, defendant was proved guilty of involuntary manslaughter beyond a reasonable doubt.

■ Under his reasonable doubt argument, defendant also attacks the testimony of Taylor Scobie. He contends that her testimony should have been stricken because part of it may have been based on a pretrial reading of her testimony given at the preliminary hearing. The credibility of witnesses and the weight to be given their testimony, however, are matters for the trial court. Defendant cross-examined the witness extensively, and her testimony was properly received.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.