THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHRISTINE WEEKS, Defendant-Appellant.

Second District   No. 81—768

Opinion filed June 22, 1983.

HOPF, J., dissenting.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (Phyllis J. Perko and Gene Armentrout, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Christine Weeks, was found guilty of involuntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)) and was sentenced to a term of three years' imprisonment. She appeals, contending the evidence was insufficient to establish her guilt beyond a reasonable doubt and that the trial court arbitrarily denied a sentence of probation and abused its discretion in the sentence it did impose.

The information upon which defendant was tried charged that she committed involuntary manslaughter in that she

"acting in a reckless manner, performed an act likely to cause death or great bodily harm to some individual, in that said defendant did give live birth to a female child and then cover and wrap said female child in sheets and blankets and leave said female child on the floor of defendant's apartment from 7:30 p.m. January 9, 1981, until 11:00 a.m. January 10, 1981, and then place said female child and said wrappings in garbage bags until 6:00 p.m. January 11, 1981, and then place said female child, wrappings and garbage bag outside at the curb on W. 2nd Street just east of Monroe Avenue, Dixon, Lee County, Illinois, thereby causing the death of Baby Girl Weeks, in violation of Section 9—3(a), Chapter 38, Illinois Revised Statutes."

At trial, defendant testified she was 20 years old, single and lived alone in a one-room apartment which had no telephone or water supply; the bathroom was downstairs in the house. On Friday, January 9,

1981, her mother gave her a ride home from defendant's employment and she arrived at her apartment shortly after 4 p.m. She had not been feeling well throughout the day and believed she might be coming down with the flu. Defendant was about seven months pregnant, but did not yet show it, and no one other than her former boyfriend was aware of the pregnancy. She fell asleep on her bed at about 5 p.m., but awoke two hours later in pain and feeling pressure. She pulled bedclothes to the floor and lay down; the pressure increased, her water broke, and the baby started to come. The room was dark and the only light was from a street light through the window. After the birth defendant lay on the floor in pain and felt weak; she was bleeding and it increased when she pulled out the afterbirth. Defendant testified she lay there for five to 10 minutes trying to figure if it had really happened. She heard the baby whimper, then crawled a few feet to a corner of the room and passed out. Defendant regained consciousness early the next morning and found the baby was dead. She testified she covered it at that time.

On cross-examination defendant testified she screamed during the birth but did not call out for help or attempt to get medical attention after the birth because she was too embarrassed; that she realized the baby needed help, but did not assist the child because of her pain and weakness. Defendant acknowledged she had told police officers that she had covered the child after its birth rather than on the following morning and also that she had later placed the body at the curb with the garbage to conceal the fact she had given birth.

Dale Chandler testified he was out on the evening of Sunday, January 13 looking for clothes and junk at the curb which he would repair and give to the needy. He found a garbage bag in which there was a box containing the body of an infant and its placenta and also a bloody blanket and clothing. Chandler called the police who located a paycheck stub in the bag which they traced to defendant.

Officers Harry Ulferts and Robert Short talked to defendant later that night at the police station. Ulferts testified she first denied giving birth, then admitted she had delivered the child. She stated it had moved a little bit after birth and she had later covered it with a blanket. Defendant said the baby had not cried after birth, but had whimpered. When asked how long that occurred defendant said she did not know and when requested to set a minimum and maximum period in which the baby whimpered, she responded she was not sure but fixed the period from 10 minutes to 30 minutes. Ulferts further testified defendant said she had remained on the floor after the birth until the next day and on the following evening placed the body and bloody

clothes in a garbage bag on the curb. Defendant said she was too embarrassed to ask for help because it was an unwanted pregnancy and the child's father had become her sister's boyfriend.

Officer Short testified that defendant said she had covered the child completely after its birth and had then lain on the floor until the next day. She told him the baby had come too fast for her to call for help.

Dr. Grant Johnson, a pathologist, testified he conducted an autopsy but was unable to determine the cause of the child's death. He stated that no medical or traumatic cause of death was found and that no medical findings led to a diagnosis of asphyxia. The doctor also testified that the most probable cause of death was lack of post-partum care, probably with an element of asphyxia. He stated an infant requires care immediately after birth, warmth, feeding to avoid dehydration and clearing of the respiratory passages of foreign material which might gain access during birth. Dr. Johnson determined the baby had been born alive and, although premature, was capable of surviving. On cross-examination Dr. Johnson testified there were no anatomical findings in his examination leading to a diagnosis of asphyxia as a possible or contributing cause of death and that his conclusion relating to asphyxia was based entirely upon information supplied to him by police officers.

Dr. Kathleen Gibbons, called by defendant, testified that it would be normal for a woman to suffer a perineal tear giving birth for the first time, as did defendant, and become very fatigued from loss of blood. Dr. Gibbons further testified that a new-born infant begins to breathe within a minute and normally gives out a very husky, loud cry. If, however, an infant is whimpering, but not crying, there could be a problem, such as asphyxia during the birth.

No medical evidence was presented as to how long the infant lived after birth. Defendant testified the child was dead when she saw it early the following morning.

■ The State was required to prove beyond a reasonable doubt each of the essential elements of the offense of involuntary manslaughter: (1) that defendant did an act; (2) which caused the death of another; (3) and the act, which was such that it was likely to cause death or great bodily harm; (4) was performed recklessly. (*People v. York* (1978), 57 Ill. App. 3d 243, 247, 373 N.E.2d 90, 93; Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) Section 4—6 of the Criminal Code of 1961 defines recklessness as a conscious disregard of a substantial and unjustifiable risk, which disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise

in the situation. (Ill. Rev. Stat. 1981, ch. 38, par. 4—6.) Section 2—2 of the Criminal Code of 1961 provides that an " 'act' includes a failure or omission to take action" (Ill. Rev. Stat. 1981, ch. 38, par. 2—2) and must be read *in pari materia* with section 4—1 of the Criminal Code of 1961, which provides:

"A material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and *which he is physically capable of performing*." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 4—1.

Defendant contends the State failed to prove that she committed an act causing the death of the infant and, in light of the uncontradicted evidence she lost consciousness shortly after giving birth, failed to establish the requisite mental state of recklessness. The State does not argue that any overt act on the part of the defendant contributed to cause the death, but asserts that under the evidence the jury could properly find that by failing to assist the child defendant consciously disregarded a substantial risk to its life and thus acted recklessly.

■ Neither the State nor defendant discuss in their briefs the nature and extent of the "duty which the law imposes" under these circumstances. (See, *e.g.,* Ill. Rev. Stat. 1981, ch. 38, par. 9—4 (concealing death of a bastard); Ill. Rev. Stat. 1981, ch. 23, par. 2354 (endangering life or health of a child); Ill. Rev. Stat. 1981, ch. 23, par. 2368 (cruelty to children).) However, assuming a legal duty existed, we conclude the State has failed to establish beyond a reasonable doubt that defendant was physically capable of performing it.

There were no first-hand witnesses to the unfortunate occurrence other than defendant and, as the State's case is premised entirely upon circumstantial evidence, it must be sufficient to establish to a reasonable and moral certainty that defendant committed the offense charged. (*People v. Einstein* (1982), 106 Ill. App. 3d 526, 532, 435 N.E.2d 1257, 1262; *In re Stokes* (1982), 108 Ill. App. 3d 637, 641, 439 N.E.2d 514, 517, *appeal denied* (1982), 92 Ill. 2d 572; *People v. Larson* (1980), 82 Ill. App. 3d 129, 136-37, 402 N.E.2d 732, 738-39, *appeal denied* (1980), 81 Ill. 2d 596.) Moreover, such evidence must be inconsistent with any reasonable hypothesis of defendant's innocence. (*People v. Rogers* (1982), 104 Ill. App. 3d 326, 328-30, 432 N.E.2d 975, 977; *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 1142-43, 440 N.E.2d 160, 164, *appeal denied* (1982), 92 Ill. 2d 571; *People v. Larson* (1980), 82 Ill. App. 3d 129, 137, 402 N.E.2d 732, 739, *appeal denied* (1980), 81 Ill. 2d 596.) If in such circumstances the evidence presents a reasonable hypothesis of defendant's innocence, it must be

accepted. *People v. Sumner* (1982), 107 Ill. App. 3d 368, 372, 437 N.E.2d 786, 789, *appeal denied* (1982), 91 Ill. 2d 579; *People v. Dennis* (1976), 43 Ill. App. 3d 518, 521, 357 N.E.2d 563, 565, *appeal denied* (1977), 65 Ill. 2d 578.

■ The credibility of witnesses and weight to be given to their testimony are considerations for the jury; it may not, however, arbitrarily or capriciously reject the testimony of an unimpeached witness. Where testimony is neither contradicted by other witnesses or by circumstances, is not inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded by the jury. (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127; *People v. Ellis* (1982), 107 Ill. App. 3d 603, 610, 437 N.E.2d 409, 415.) Defendant testified that after the birth she was in pain, losing blood and felt weak; she covered the child with a blanket and lost consciousness until the next morning at which time the child was dead. The hypothesis of innocence implicit in the evidence is that defendant was physically incapable of further assisting her child at that time. In our view, it is only through conjecture or speculation that it may be determined she recklessly failed to render required assistance to the child causing its death.

The State has not cited any case in which criminal liability under similar circumstances was premised upon an alleged failure to act. In *People v. Brechon* (1979), 72 Ill. App. 3d 178, 390 N.E.2d 626, offered by the State, defendant struck a child and held its face under water; the reviewing court determined the evidence was there sufficient to sustain defendant's conviction for involuntary manslaughter. In *People v. Ryan* (1956), 9 Ill. 2d 467, 138 N.E.2d 516, defendant, a registered nurse familiar with childbirth, placed her new-born child in a tightly locked overnight case until it died. The conviction for involuntary manslaughter was also affirmed under those circumstances.

■ It is the duty of a reviewing court to set aside a conviction if the evidence is not sufficient to remove all reasonable doubt of defendant's guilt and to create an abiding conviction she is guilty of the crime charged. (*People v. Ibom* (1962), 25 Ill. 2d 585, 593, 185 N.E.2d 690, 697; see *People v. Martin* (1963), 26 Ill. 2d 547, 188 N.E.2d 4.) We have carefully reviewed the evidence in this case and find it to be insufficient to sustain defendant's conviction for involuntary manslaughter.

As the judgment of conviction must be reversed we need not consider defendant's other argument.

Reversed.

SEIDENFELD, P.J., concurs.

JUSTICE HOPF, dissenting:
I respectfully dissent. I would have affirmed the conviction.

The majority postulates its position on the point that the evidence presented was entirely circumstantial. I do not know whether we can quite go that far as to say the case was entirely circumstantial. There was certain direct evidence, *e.g.*: defendant's admissions, testimony concerning the dead baby and the bloody blanket. Nonetheless, even if the case is considered circumstantial, I believe there was sufficient evidence to convict.

It is true that in a circumstantial case the evidence must be sufficient to establish to a reasonable and moral certainty that the defendant committed the offense charged (*People v. Einstein* (1982), 106 Ill. App. 3d 526, 532, 435 N.E.2d 1257, 1262), and that the evidence must be inconsistent with any reasonable hypothesis of the defendant's innocence. *People v. Rogers* (1982), 104 Ill. App. 3d 326, 328, 432 N.E.2d 975, 977.

In a homicide prosecution where the accused is the sole person who can testify as to what happened, the trier of fact is not compelled to accept everything the accused states to be conclusive, but may consider surrounding circumstances and the probability of his story. *People v. York* (1978), 57 Ill. App. 3d 243, 248, 373 N.E.2d 90.

What constitutes recklessness or gross deviation from the standard of care which a reasonable person would exercise in the given situation has been described as a question of fact for the trier of fact. (*People v. Schwartz* (1978), 64 Ill. App. 3d 989, 993, 382 N.E.2d 59; *People v. Rodgers* (1971), 2 Ill. App. 3d 507, 511, 276 N.E.2d 504.) Also, whether the State proved beyond a reasonable doubt that the defendant acted recklessly, the defendant's requisite mental state must be inferred from the surrounding circumstances. Recklessness is no different; and, unless we find the inference of mental state accepted by the jury to be inherently impossible or unreasonable, the findings of the trier of fact should not be disturbed on appeal. *People v. York* (1978), 57 Ill. App. 3d 243, 248, 373 N.E.2d 90; *People v. Parker* (1976), 35 Ill. App. 3d 870, 343 N.E.2d 52.

There is not a great disparity between what the defendant testified to in her defense and what was offered by the State by way of the officer's testimony. The primary difference is the period of time that she heard the child whimpering before she passed out. Therefore, it is for the jury to interpret her actions. *People v. Schwartz* (1978), 64 Ill. App. 3d 989, 993, 382 N.E.2d 59.

The majority is of the opinion that there is a reasonable hypothesis that the defendant was physically incapable of assisting the child at that time and that it was only speculation that she recklessly failed to render assistance. In *People v. Brechon* (1979), 72 Ill. App. 3d 178, 181, 390 N.E.2d 626, it is stated:

> "Although the defendant argues that there is a reasonable hypothesis of his innocence, the jury should not disregard the inferences from the evidence and are not required to search out explanations compatible with innocence or to elevate those explanations to the status of reasonable doubt."

Here the defendant, through her testimony and by various admissions made to the police, admitted she gave birth to a premature baby and that she covered the baby with a blanket. One of the officers testified that she had told him that the baby whimpered for a period of 15 to 30 minutes. She testified that she did not call out for help because she was embarrassed, that the pregnancy was an unwanted pregnancy brought about by contact with a man who was now her sister's boyfriend.

I believe there were sufficient facts to support the jury's finding that defendant's reckless conduct in not providing care for the baby was the act which brought about its death. I do not deem that this was so inherently impossible or unreasonable to warrant substituting our judgment for the jury's. *People v. Daily* (1979), 79 Ill. App. 3d 928, 937, 398 N.E.2d 923, 929.

The majority also takes the position that the State had not proved beyond a reasonable doubt that the defendant was physically capable of further care for the infant. I do not agree, and I further note that the defendant had time to care for herself, *e.g.*, that she removed the placenta. This would militate against her claim that she was physically unable to care for her infant or to call out for help for her child.

I simply believe that in all of these issues there was sufficient evidence to establish that the defendant's criminal agency is what caused her daughter's death, and that there was sufficient evidence to support the jury's verdict.